Good morning, Your Honors. My name is Barry Coffman, and I represent the appellant, Barry Cliff. First off, thank you for the privilege of allowing me to appear before us my first time here. I've never seen a courthouse quite like this before. There probably isn't another courthouse quite like this. Well, the one in Pasadena I have been to, and that's quite magnificent also. I'm sure you've seen it. It's a different style. I've never seen anything quite like this. So this is fun for me. I hope that I can answer any questions that you may have. Your Honors, I spent a lot of time on the briefs. I understand that we have a somewhat thick record in this case because it comprises two volumes. In comparison to others, perhaps it's not quite as long as others. But I endeavored to do everything that I needed to do, say everything that I needed to say in those briefs. So what issues would you like to talk to us about today? Well, the fundamental issue, Your Honor, is this is a summary judgment case. If one were to read the appellee's brief, one would think that there was no evidence submitted, that the excerpts of the record would be this thin. But there was a wealth of evidence. I don't understand, honestly, why the district court did not resolve any inferences in favor of my client. Well, Counselor, there was a tremendous amount of evidence, certainly, and there's a very debatable point as to whether or not there was cause for the termination. No question about that. Understood. But the district court was able to resolve this without having to get to that. It's not simply a matter of it being disputed material facts. There's plenty of those in this case. But they were irrelevant to the issue of whether or not your client entered into an at-will contract. And if we accept the district court's characterization of the contract as including the various documents, including most significantly to me, at this point, the actual written agreement was set forth that it was an at-will contract. Everything after that becomes somewhat secondary. Absolutely correct, Your Honor. And let me say up front that I've been practicing labor and employment law for 25 years. I'm not going to stand before you and say that at-will documents are, by nature, unconscionable. When I'm representing management clients, we use them all the time. They are effective devices to contain liability. What makes this case unique, however, is that the circumstances in which these documents were obtained by HP is so different from an arm's-length transaction. In a normal at-will situation, you have, like in the Door case, the California Supreme Court case that came out in 2006 on this, you send an offer letter to the employee. You say, employee, these are the terms of your offer. This is what you need to do in order to work here. And right in the offer letter in the Door case, it said part of the deal, if you want to come to work for us is you have to understand that your employment is at-will, which means that we can terminate you at any time. So what do we make of the new hire, rehire enrollment checklist, which says, as part of the offer acceptance process, please complete the following documents, et cetera, et cetera. And then it says if the forms are not received by this date, the offer will terminate. And one of those forms, of course, contains the at-will language. But that document was sent after the contract was formed, Your Honor. That was part of the timing is what I mentioned in the briefs. It's so important in this case. You have an extensive recruiting process. The fellows brought down, you know about all that. Finally, on July 1st, they sent him an offer letter. And the offer letter sets forth four things that he must agree to, four material terms of the offer that he must agree to if he wants to work at HP. It seems to me, though, that your argument melds together two separate and distinct claims, one promissory estoppel and the other contract. The contract claim rises or falls on what the contract says or doesn't say, regardless of who initiated or who relied or who gave up something or got something. So I'm having, I guess, the same difficulty as my colleagues seem to be having with the employment acceptance form, which very clearly says that his employment is terminable at will by either party and is not for any fixed period of time. Now, that says nothing about your promissory estoppel claim. But I'm having great difficulty seeing any issue of fact with regard to the contract claim. Judge Gabor, let me try to narrow the focus then. Clearly, we have an undisputed record about representations that were made prior to the time that an offer is accepted. I agree with you that that goes to the group clause. Are you talking about the oral representations or written representations? Oral representations. Why should we even consider these oral representations, given that we have a written contract here? Well, actually, we don't have a written contract here. What we have are pieces of paper, which HP is saying these are the contract. But what we really have is an offer letter sent on July 1st that enumerates four terms, none of which talk about at will. Then we have a July 2nd letter, which is sent the next day, that outlines the steps that he must take if he wishes to accept HP's offer. That's on the 2nd of July, no mention of at will employment. On the 6th of July. Well, wait a second. One of those documents that are referred to is another document which does have the language in it. In the document, it's actually, let me check. I may be mistaken on that. I think you're wrong on that, Your Honor. Please point out the form that you're referring to is where in the record? The employment acceptance form is on ER 125. Okay. The point is, though, that there's a series of documents and there's a series of exchanges which set forth the offer, and they all make it clear that there is to be no acceptance and there can be no acceptance, there can be no contract until all of these documents are fulfilled. And certainly California law permits a series of documents to comprise the overall contract, correct? Well, under Civil Code Section 1624, whether a series of documents can be read together to form a contract is a fact question. They cited a case called Brookwood v. Bank of America. That case clearly holds it to be a fact issue. The district court determined that issue on its own. But now that we're on the same page, this form entitled Employment Acceptance Form is the one that was sent under cover of the July 8 letter or e-mail sent to Mr. Cliff. And that's the one that has the language that I repeated ad nauseum in the brief, because that, the letter that was the cover letter to essentially a website link saying go here and print out these forms and sign them says, we are pleased that you have accepted our offer. But what's interesting about this acceptance form also is that it references what seems to be a nonexistent offer letter. And I don't know what to make of that. It says, I accept HP's offer, and neither party really dealt with this, I don't recall in the briefs. I accept HP's offer of employment as outlined in the offer letter dated 7-7-2004. And I never did find in the record any letter dated 7-7-2004. So, you know, there may be no contract whatsoever, but that somewhat confused me. I don't know what to make of that. But at least it doesn't incorporate by reference any of the letters that you're relying on. Perhaps there was a typo then. It's handwritten. I don't know whether it can be a write-o instead of a typo. I don't know. The offer letter is written. It's in the excerpts of record at page 116. I understand that. There are letters in the record, but none of them are dated 7-7-2004. I believe that's correct, yes. And so the employment acceptance form doesn't incorporate anything, potentially, except its own terms, which is that it's an at-will employment. Perhaps I've failed the Court in how I tried to summarize the briefs. If the Court will indulge me, can I just walk it through the timeline one more time? There is the offer letter that we have in the excerpts of record at page 116. This was Exhibit 3 to the summary judgment motion. And that one says, Dear Barry, we are very pleased that you are interested in joining the talented team of people at Hewlett Packard. And this is the one that has the four terms that Cliff would have to agree to, that I mentioned on page 32 of my opening brief. It's found in the excerpts of record also at 306. It says this is what you have to do. It doesn't say anything about at-will. Then we have a follow-up letter that is sent on July 2nd. And that's excerpts of record 309. I realize now that the document that I referred to as the July 1st letter appears both in the defendants' moving papers as well as in our opposition papers. So it appears two places, at EOR 116 and at EOR 306. So we've got the July 1st letter. It doesn't say anything about at-will. Then we have the July 2nd letter. And that's the one that has the language that says, quote, you know, these are your, quote, next steps to accepting our offer, close quote. That's at 309. Again, at-will is not mentioned. And so then what we have is the next pertinent date is four days later. Are you suggesting at that point there is a contract between the parties? I'm suggesting that what we don't have in this case is an integrated written contract. So applying the totality of circumstances and the GOOS principles, set forth in GOOS v. Bechtel and Foley v. Interactive Data Corporation, you know that it's an intensely factual determination where you look at various things that could be in writing. That's not my question, counsel. I'm sorry, Mr. Chief. Are you suggesting at this point, as of the July 2nd letter, that there is a contract between these parties? Yes. But I've never, it's never been a policy contention that this case is about a written contract. No, but I mean, how can you say that there is an acceptance? Because it says, we are extremely pleased you are considering HP as a future employer and want to ensure that you have the necessary information available to you to finalize your decision. Here's how it's in the letter. It's a record of 318. There's a letter dated July 8th, and that is one that I actually highlighted for the petition report. It says, dear Barry, we are pleased you have accepted our offer of employment. Offer, acceptance. If that was on the table prior to July 8th. In that same letter, though, they go on to say in order to avoid delays in processing and you're specifically requested to complete certain applications. I mean, it's not at all, so it's your suggestion that there is a contract then at that point? At that point in time, I'm contending that they have confirmed that a contract has been formed. What if he'd never returned any of the forms that are listed in the July 8th letter? Contract or no contract? Contract. Absolutely. So he could just say, well, I don't want to fill out any of your forms. You now owe me a lot of money. And then at that point, it would be the employer's duty to say to Mr. Clinton, you know what, at will is a material term of our employment here at HP. Do you agree or not agree? They did do that. They did. They gave him the contract and said sign or. . . But, Your Honor, I respectfully submit that they didn't. Because what the reality is, he accepts their offer. He communicates that. They confirm by July 8th that he's accepted it. And then they say, in order to avoid delays in processing your first paycheck, please return all forms. Why would they send an application form after they confirmed in writing that he's already accepted their offer? That's the fundamental disconnect in the case. Well, I'm not sure that it is a disconnect. I mean, I don't think it's quite unusual for someone to say, okay, I'm going to take the job, and then you get some confirming documents, and you look at, whoa, wait a minute, what's in that? And that's what happened in this case, is that they have an at-will contingency, but he signs it. I mean, there's no contrary evidence in the record that it wasn't an at-will contract. You silence, right? There is evidence in the record that Mr. Clark. . . Written evidence. I'm sorry. Written evidence. Written evidence, no. No. But what we have here, I think what the real reality of the situation is, is that HP didn't deal with this the way I would have my clients do it or the way most employers do it. They say, typically, if you want to work here, it's at will. This is up front, arm's length, and if the employee doesn't like it, he doesn't have to accept the employment. Here. . . Well, that was true here, too. He signed it July 8th. He could have looked at it and said, I don't want to. . . I've decided I don't want to do this. He didn't read it. He didn't pay attention to your order. He didn't read it. That's his defense. He didn't read the contract. That's in the record. There's evidence that that was. . . Well, I know that, but this is a one-page thing for a high-level employee who's obviously highly educated, and his defense is, even though it's in fairly large type and very plain English, I didn't read that I had no guarantee of employment. Well, let's assume he didn't read it. Why is it still binding? I mean, I don't. . . The reason why. That's why we have the parole evidence rules and all these other rules. That's right. And the parole. . . There's no contrary written evidence. Judge Thomas, to answer your question directly, we have to then focus on when is the parole evidence rule applied and when is it not. And it's applied only where there's an express finding that the contract at issue is integrated. Judge Ware found that it wasn't. And with respect to your point, Judge Graber. . . However, I'm not sure he's right about that. I mean, it says on the new hire, and this is why I pointed out, the new hire rehire enrollment checklist. Which page of the excerpt are you on? Let's see. It's. . . Sorry. The bait stamp, I think it's. . . Document 36-3, it says, which can't be. . . That's right. I'm sorry. All right. Anyway, it just says, As part of the offer acceptance process, please print, complete, and return the following six documents. It goes on, these forms must be received by the offer expiration date referenced in your offer letter. If these forms are not received by this date, this offer will terminate. Which page are you on, Your Honor? I'm looking at. . . Well, it's obliterated, unfortunately, on my copy. Just tell me what it looks like. It's Exhibit 12. Its title is. . . Here, sign up and take a look. Oh, okay. May I approach? Yeah, absolutely. Yes, Your Honor, I'm. . . Where did that document. . . Wait. That's not sent to Mr. Cliff. Instead, what's sent to Mr. Cliff is the document that I was referring to, which is page 318. And that's the one that was actually sent to him. No, this is on the website that's referred to. It then sends him there. Yeah. It refers to the website. It goes to the website and says, You can't work for us unless you sign these documents. Isn't. . . And then it lists all of them. And one of them is the HP Employment Acceptance Form. Isn't there, though, then clearly a fact issue over whether an employer who says. . . Well, there's no fact that he was referred to this website, correct? There's no fact that he was referred to the website because he printed out the forms, and at some point they were signed. But they were sent under cover of. . . They were signed on July 8th, according to what he said. After the contract was formed. And the central point that I'm trying to make in this appeal that appears that I've failed is that if this cover letter said, We're pleased that you've accepted our offer of employment. However, we didn't mention at any point during the process that if you want to work here, you have to agree to at-will employment. Instead, all it says is, in order to avoid delays in processing your first paycheck. Well, it means they're not going to pay him unless he agrees. Does that mean? It falsely implies. . . I understand your point. But it falsely implies that it is a ministerial act. And here, HP, whose own witness has admitted at-will was not mentioned until after he was terminated. They want to predicate their entire defense on all of the good cause stuff, which we don't have to get into, on that scrap of paper that he signed where they did not fairly disclose the significance of it. Let me take it to a different issue. Sure. That I think may illustrate my concern. Let's assume that he had not signed, he refused to sign the Confidential Information and Proprietary Developments Agreement form. Just didn't sign it. I'm not going to sign that. That wasn't part of the deal. And, in fact, it's not discussed. Right? Right. Do they have to? Can they employ it? Can they say, no, wait a minute, if you don't agree to a confidentiality agreement, that changes everything for us. I mean, I've got to tell you, some judges have a confidentiality form, and I've used it occasionally for law clerks coming in. And some judges will say, look, if you don't sign that, this offer's over. But most of the time, they don't tell them that in the interview. Why is this any different? Because it was presented to him in a context where he would not be reasonably alerted that everything else that he had been told, up to the point where he accepted the offer, could be wiped out by his signature. So is it your position, then, for example, that the Confidential Information and Proprietary Developments Agreement form does not apply to him? That issue is not before the court. No, no, I'm just asking. You're basically saying none of these forms count. No, that's not what I'm saying. If this case were about him breaching the confidentiality agreement, then that issue would be one that I'd have to focus on. But here, the entire defense is predicated on two scraps of paper. The one that you pointed out is in 10-point font. It's all the real small other one. And my point is merely that there is a disputed fact issue that does not allow summary judgment over the circumstances in which those documents were presented. In the brief, I cite a case called Ellens v. McKinnon. The facts are virtually analogous to this one. This is, of course, a California case. There's also a case called Agosta, A-G-O-S-T-A v. Astore. There are several cases that say employers can't fail to disclose material information. If they're going to say it's a great place to work, employees don't get fired here, good cause is what we do here, and, in fact, they have written policies that confirm to say the same thing, then at a minimum an employer, in order to have a fair employment relationship, has to be up front about disclosing that. Otherwise, we set a precedent. And I'm not going to argue policy because that's not what I'm asking you to do. I'm asking you merely to reverse finding that there was a tribal issue of fact based on the evidence presented. But to affirm would be essentially saying employers, doesn't matter how you go about getting the signature on the form, as long as you get the form signed, you're good to go, at will applies, whether it's integrated or non-integrated, as the district court found. That can't be right. Both Foley and Guse are very clear that it's based on the totality of circumstances and that the parties have the right to contract, freedom of contract. I get that. If HP had been up front at any point during the recruiting process, if HP had been up front in the offer letter, which was July 1, if HP had been up front in the next steps to accepting our offer letter, July 2, if any of that point in that process said at will is a material term of your deal, I would not have the temerity to be here. I would not have taken the case in the first place. But that's not what they did. They said, in order to avoid delays in processing your first paycheck, fill out these forms and send them to us. But isn't the inference to that that we're not going to pay you unless you sign these forms? And let's assume that a contract had been formed prior to this time. Isn't that a modification of the contract that he then accepted by signing and taking the first paycheck? Well, which new consideration would be required? As far as the inference, I thought all reasonable inference was supposed to be resolved to my clients. No, I'm just saying. But it's possible. Intellectually, I understand what you're saying. My point is simply that in the context of summary judgment, this is something that a jury should be deciding whether it's appropriate or not. The district court did not have the right to say, all right, I see that he's already accepted. His offer has been accepted. HP confirms the acceptance. But here's something a couple days later that he signs in a different context that he doesn't even read, and I'm going to find that that's part of the overall deal. Brookwood v. Bank of America cited in Appellee's Brief says that's a question of fact, and that's essentially why I'm here. I see the red lights on. I apologize. Your questions have taken over your time. But this was fun for me, so thank you for the opportunity. I hope that I have communicated the central point that I'm trying to make. If there's a moment left for reply, I'd like that opportunity. But it's up to you, Your Honor. Thank you for your time. May it please the Court. Brett Schuman on behalf of Appellee HP. Perhaps not surprisingly to the Court, in my view, this case begins and ends with the employee employment acceptance form that the Court was questioning my colleague about. That's why it's quoted, that's why it's reproduced in full in our Appellee's Brief. And what I'd like to do is briefly talk about the two separate sentences in paragraph 5 of that form, because there are two sentences, and I think this is responsive to a question that you asked, Judge Graber. The first sentence of this form says, any employment is not for a fixed period of time and is terminable at the will of either party, either HP or me. I think that sentence defeats, as a matter of law, the claim, the contract claim in this case, that there's a good cause contract. It's undisputed he signed this document and that he agreed to an at-will employment agreement. However, and this is mentioned in our briefs, but responsive to your question, Judge Graber, there's a second sentence. No contrary representation or promises have been made to me, and no such promise or representation shall be binding unless in writing and signed by an officer of HP. My question was actually about the first sentence on the form, which seemed very odd to me because I'm not sure what letter is being referred to there. Well, you asked a couple of different questions. I was referring to the first question. Oh, okay. Where your first question, you said that the first sentence, this does not have anything to do with a promissory estoppel claim. It may deal with a contract claim. And my point is this two-sentence paragraph actually addresses both claims. Both claims. And it's not just the promissory estoppel claim. The second sentence actually, which was not, I view this case as Dorr plus or Stranisky plus because the second sentence in this agreement was not present in any of the cases cited by either of the parties. Not only do they agree it's an at-will employment relationship, but Mr. Cliff, without reservation, signs, acknowledges that he has not received any prior representations. That defeats the 970 claim, the fraud in the inducement claim. It defeats the negligent misrepresentation claim. And it defeats the promissory estoppel claim because he acknowledges there were no contrary promises made to him. I sort of could see the language as deemed part of the contract, that being so. But the question remains, as raised by your opponent, is whether or not that, was there a contract agreed to prior to that when there is language from HP indicating, oh, we're glad that you've accepted our offer. And the offer that was issued prior to that did not have any of that language. I mean, certainly that all would have been avoided, of course, if in your initial letter that would have been spelled out. A couple of quick responses. First, Labor Code Section 2922, it is presumed in this state that employment is at will unless proven otherwise. I didn't hear any discussion of that, and it's not addressed in the plaintiff's briefs. This was an at-will employment relationship all along. Was that ever presented to the district court, that argument? All the cases cited by the district court discuss and include, they all rely on 2922. That's not my question, counsel. Did you present that argument to the district court? I do not know whether Labor Code Section 2922 is separately cited in our briefs. We presented the district court with the Strunitzky case, which itself relies on 2922. Dorr is a 2922 case. This is a, it begins as an at-will employment, and the burden is on Mr. Cliff to show otherwise. It's more than just the normal plaintiff's burden of proof. It's more than just inferences at summary judgment. This is a presumed fact pursuant to California public policy. The question was about whether or not the contract had been formed prior to the signing of the document, not the presumption of at-will employment. My point, I'm sorry. My point was if, in fact, I'm going to get to the fact that there was no contract form, but if, in fact, there had been a contract. Answer the question first, if you can. The contract documents, the documents that the court, that are in the record, refer to, as Judge Ware correctly determined, a hiring process. These forms, as the court was discussing earlier, they all needed to be signed before there could be a formal contract of employment. Is that a question of fact? I don't think it's a question of fact. I think the, the. Well, I mean, I could understand perhaps the argument, and I, is that there may be a form that integrates the documents. But Judge Ware found to the contrary. So this was a process. There are a whole bunch of different forms. So if it's a process, it means you don't have one single contract necessarily. And is that a question of fact? Well, a question, but not a question of. I mean, if you don't have an integrated. I didn't put my question very well. If you don't have an integrated document, and it's described as a process, isn't it a question of fact as to whether you integrate the documents or not? Well, I don't believe so. But if it's a question of fact as to whether the, the, whether the documents are integrated or not in, in numerous of the cases cited in our briefs, including Eisenberg versus Alabama news, Alameda County newspapers, the parole evidence rule on whether it's an integrated contract is irrelevant. The question is, what was the intent of the parties? That's always the question in a contract case. Well, isn't that a question of fact? No. All the cases cited in our brief are summary judgment cases. Plaintiff comes in and says, I was told I'd be here for a long time. I signed this document. Courts grant summary judgment all the time in those circumstances. Right. But what he said, as I understand the argument really, is that the offered acceptance was complete on, in July 2nd or at least by the, by the, by the time any of the other documents were, were transmitted to him. But that was the end of the argument and that, and the end of the, the end of the transaction. And the rest of it is not enforceable because, in fact, the integrated contract had already been agreed to that didn't contain the terms. I mean, that's his argument. But it also. Your argument is, is it's a, it's no, no, this was a, it was contemplated by the parties it was going to be a transaction. And if you say that's a question of intent and if Judge Ware says, gee, you kind of, we've got to take all these things together and figure out how they interrelate, isn't that a factual question? I'm not saying you don't win it necessarily at travel. Why isn't that a factual question? Two, two responses. And this is where I maybe got sidetracked with Judge Larson's question. Even if a contract had been formed, a binding contract had been formed prior to his, him signing the July 8th employment acceptance form, the question for summary judgment is whether that's a good cause contract or whether it's an at-will contract. The presumption is it's an at-will contract, and he did not adduce any evidence that it was a good cause contract. So in other words, you're saying the statute requires that it be considered an at-will contract unless there's affirmative evidence otherwise. Yes. Okay. And I want to talk about the evidence for a moment because there's a disconnect between the record and at least the appellant's opening brief. The evidence, Mr. Cliff's deposition, where he describes these interviews, all the evidence comes from a June 2nd interview at HP, and Mr. Cliff flew down to HP and met with various HP personnel, and two phone interviews. One was a screening interview before the in-person interview, and the one after was somebody who was not able to make the in-person interview. The entire course of discussion is in the deposition. It's at EOR, excerpts of record 274 to 294. And in there are comments like HP is a place where you can spend your entire career. The HP way is practice. Those are the things that Mr. Cliff testified he was told. There is never any discussion, much less any written documents responsive to your earlier question, Judge Thomas. There is never any discussion of the circumstances under which Mr. Cliff may or may not be terminated. There is no discussion of at will or for cause, and my point is he has to prove it's a good cause contract, otherwise it's presumed to be an at will contract. In the opening brief, there is a statement. Cliff was expressly and repeatedly assured that if he was hired by HP, his employment would not be terminated without some, quote, fair or honest reason and without advance notice of any perceived performance deficiency. There is no cite for that in the brief, and I submit if you look at the testimony at his deposition, that was not said to him. There was no discussion at all of the circumstances under which he could be terminated. So putting these two points together, it's presumed to be at will. Whenever the contract was formed, our position is it could not have been formed because the documents he got from HP clearly expressed the only way this could be a final contract is by signing all the forms, including the employment acceptance form. But if the Court disagrees with me about that and if the Court wants to accept that at any time prior to that, sorry, Mr. Cliff accepted a contract, it still was not a good cause contract. Going back, though, to the process, Judge Ware determined as a matter of law on summary judgment that there were no fact issues that the employment acceptance form and the signing of that document was part of the process here. If the Court would, I would refer the Court to the July 2, 2004 letter. This is EOR 309. This is before, I believe, I heard a couple of different dates during Mr. Kauffman's presentation, but I think the date he's claiming he accepted was July the 6th when he sent the email to Ms. Hunt and others at HP. On July 2nd, he received a letter from HP's Human Resources Services Department that described the hiring as a process. This is on EOR 309. And on EOR 310, the second page of that letter, there is an express reference to the employment acceptance letter. Once you have accepted and completed the background screening enrollment, that's what's discussed in the earlier part of this document, you will be sent your employment acceptance letter. That is a clear expression that the agreement is not final. He does not have the power to accept and form a legally binding agreement until at least the employment acceptance letter has been sent and returned. That is ñ It's next to the last paragraph. Yes. I'm sorry. If you have any questions. Correct. And the second sentence says, this is July 2nd, remember, before he claims he formed an agreement. He knows there's going to be an employment acceptance letter. He signed that employment acceptance letter on July 8th without reservation, acknowledging this was an at-will relationship. As I said when I began, I believe the document is the beginning and the end of the case. But if the Court does not agree with me for any of the reasons we've discussed, I would emphasize it does not mean there's a triable issue of fact because the issue, the material issue for summary judgment is was this an at-will contract or was it a good cause contract? And he did not adduce any evidence that this was a good cause contract. The statements that he testified to, indulging the inferences that go in favor of a plaintiff at summary judgment, that HP is a really good place to work, that you could spend your entire career there, that they're looking for somebody on a long-term basis because there's a lot of long-term programs that they want him to help out with, those all fit very squarely. First of all, obviously, none of them say anything about cause for termination. They all fit squarely into Labor Code section 2922. Employment having no specified term may be terminated at the will of either party. There is no term even alleged, certainly not proven, by Mr. Cliff. So it's an at-will employment relationship from the beginning until the time he signs the employment acceptance form on July 8th and at all intervals in between. So whatever date Mr. Kaufman claims a binding agreement was formed, it was an at-will agreement, and that's dispositive for summary judgment. If I might add, the noncontract claims, I touched on them earlier, but Judge Ware found no misstatements, determined that there was no evidence that any of these statements I've just adverted to were in fact untrue. And I think that's a perfectly fine basis for resolving the 970 claim, the negligent misrepresentation claim, and the promissory fraud claim. But I think the Doar v. Arnold Worldwide Systems case, what the Supreme Court said in that case, it was very much the same argument, and the Supreme Court said, well, we're not going to analyze the assertions on appeal that there was, you know, intent not to perform misrepresentations because we agree that reliance can't be shown. He signed this form on the 8th of July before he came. He signed it in Washington. In fact, it states it right on the face of the form. He's in Samish, Washington, before he ever came down to be employed by HP. He can have, as a matter of law, under Doar, California Supreme Court has said there is no reliance. Each of his noncontract claims has a reasonable reliance element to it. So, therefore, all those claims fail for the same reason the Court said in Doar. You can affirm based on judge. Where's rationale? That's fine. But, of course, the Court affirms the result, not the rationale. And the Supreme Court said you can affirm on reliance as well. I have nothing further. Thank you, counsel. The case is heard. We submitted it. Well, we did go seven minutes. I'll give you one minute. To answer your question, Judge Lawson, no. 2922, the presumption of statutory employment was not raised in the proceedings before the district court. That's the reason why I pointed out in the reply brief that this was the first time it was raised in Apelli's brief. The statement that no evidence was presented is belied by the record. And the specific place to look is excerpt of record pages 251 through 253, excerpts of record pages 273 through 294, and it's cited in the appellant's opening brief. All this discussion about the evidence, good cause, I really thought that that was the secondary issue because the focus was what is the intent of the parties? Counsel concedes that's the key issue under California law. What was the intent of the parties? And what we have here is a disputed fact issue because even that last document that he was reading from, the next steps to accepting our offer letter, that's excerpt of record 309, dated July 2nd, it outlines what the steps are in excruciating detail. And it says once you have accepted and completed the background screening enrollment, you will be sent an employment acceptance letter along with more information about how to access your personalized HP benefit selections. If there was ever a time for HP to say, warning, if you sign some forms later, make sure you read them because they're not just about getting your first paycheck. They're about giving us the ability to get away with anything that we do down the lines on the basis of would have been the time for them to disclose that. But the record is undisputed. They never mentioned it. And your point, Your Honor, was exactly dead on from the point that I was trying to make, which is these are various pieces of paper. There is evidence of good cause contract. He says it's there on the record. It's in Mr. Cliff's declaration and all the stuff that's attached to my declaration with deposition excerpts from the various people who spoke with Mr. Cliff. I understand that that's a weighing process, but that's why summary judgment wasn't appropriate. Whether that carries the day at the end of the day, you may be right. Mr. Cliff may lose. But this is not like Doar. The Doar case is a real outlaw employment contract that's right up front in the offer letter. There was no incorporation by reference. Don't go to our website. Right there it says, Brooke, if you want to work here, Brooke was the name of Mr. Doar, if you want to work here, you have to agree to outlaw employment. That's the way employers need to do it so that there's no misunderstandings and we don't find ourselves in situations like we find ourselves here. Your Honor, you've been very generous with your time. I respectfully thank you for everything that you've done, whether you rule against me or not. I know that you all have worked very hard on this because it's quite a case. But it's summary judgment. I think Mr. Cliff's entitled to have the jury resolve these disputed fact issues. Thank you so much for your time. Thank you, counsel. Thank you both for your arguments. The case is here to be submitted and will be in recess for the morning.
judges: Thomas, Graber, Larson